UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ANDRIA C. HOUGHTON, <br><br> Plaintiff, <br><br> v. <br><br> THE HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY, <br><br> Defendant. | CASE NO. C16-1186RAJ <br><br> ORDER |

## I. INTRODUCTION

This matter comes before the Court on Cross Motions filed by Plaintiff Andria C. Houghton and Defendant The Hartford Life and Accident Insurance Company ("Hartford"), seeking a final judgment from this Court under Federal Rule of Civil Procedure 52 based on an administrative record created in an underlying Employee Retirement Income Security Act ("ERISA") dispute. Dkt. ## 15-16. Plaintiff brings this action under ERISA, 29 U.S.C. § 1001 *et seq.* to recover long-term disability ("LTD")

and waiver of premium ("WOP") benefits under Hartford's long term disability benefits plan ("LTD Plan") and life insurance benefits policy ("Life Insurance Policy").

## II.  LEGAL STANDARD

Typically, a request to reach judgment prior to trial would be made under a Rule 56 motion for summary judgment, however under such a motion the Court is forbidden to make factual findings or weigh evidence. *T.W. Elec. Servs., Inc. v. Pac. Elec. Contractor's Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Instead, the parties here propose the Court conduct a trial on the administrative record under Rule 52. *See* Dkt. # 11. The procedure for such a trial is outlined in *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1095 (9th Cir. 1999) (noting that "the district court may try the case on the record that the administrator had before it."). In a trial on the administrative record, the district judge reviews the evidence to determine "whether [the Plaintiff] is disabled within the terms of the policy." *Id*. Further, "in a trial on the record, but not on summary judgment, the judge can evaluate the persuasiveness of conflicting testimony and decide which is more likely true." *Id*.

"ERISA does not set out the appropriate standard of review for actions under § 1132(a)(1)(B) challenging eligibility determinations." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 (1989). However, where, as here, the parties have stipulated to *de novo* review, the Court may accept the stipulation and review the administrative record accordingly. *Bigham v. Liberty Life Assurance Co. of Boston*, 148 F.Supp.3d 1159, 1161 (W.D. Wash. 2015); *Bunger v. Unum Life Ins. Co. of Am.*, 196 F.Supp.3d 1175, 1177 (W.D. Wash. 2016). This *de novo* standard requires the Court to make findings of fact

and weigh the evidence. *See Walker v. Am. Home Shield Long Term Disability Plan*, 180 F.3d 1065, 1069 (9th Cir. 1999) (*de novo* review applies to plan administrator's factual findings as well as plan interpretation).

The Court issues the following findings and conclusions, pursuant to Rule 52.

### III. FINDINGS OF FACT

1. Plaintiff Andria Houghton was employed by Neustar as a "Senior Technical Writer" from 2002 until January, 2014. HARTRCD[1] at 724. This position required the ability to "concentrate a lot," "take code/interface," and "explain how to use it." *Id*. at 837. Plaintiff's position did not require any standing or walking, but did require occasional driving when she travelled for work. *Id*. at 724, 795, 799, 837.

2. Plaintiff was offered LTD benefits by her employer through a Plan administered by Hartford, Policy Numbers GLT-871744. HARTPLN at 29-55. As a full-time employee working a minimum of 30 hours per week, Plaintiff was eligible for benefits.

3. The Plan provided in relevant part:

*__Disability or Disabled__* means You are prevented from performing one or more of the Essential Duties of:

1) Your Occupation during the Elimination Period;

2) Your Occupation, for the 2 year(s) following the Elimination Period, and as a result Your Current Monthly Earnings are less than 80% of Your Indexed Pre-disability Earnings; and

3) After that, Any Occupation.

---

[1] The administrative record submitted to the Court consists of two separately paginated documents. One document contains the Plan at issue and is marked "HARTPLN." The second document contains other documentation that Hartford considered in its benefits decision and is marked "HARTRCD." For the purpose of consistency, the Court uses this citation style.

> Your ability to work the number of hours in Your regularly scheduled work week is an Essential Duty.
>
> The Elimination Period is 180 days.
>
> …
>
> The Plan further provides that benefits will be paid only if the applicant meets all of the following conditions:
>
> 1) become[s] Disabled while insured under The Policy;
>
> 2) [is] Disabled throughout the Elimination Period;
>
> 3) remain[s] Disabled beyond the Elimination Period; and
>
> 4) submit[s] Proof of Loss to [Defendant].
>
> …
>
> Coverage terminates on the earliest of the following:
>
> 1) the date The Policy terminates;
>
> 2) the date The Policy no longer insures Your class;
>
> 3) the date the premium payment is due but not paid;
>
> 4) the last day of the period for which You make any required premium contribution;
>
> 5) the date Your Employer terminates Your employment; or
>
> 6) the date You cease to be a Full time Active Employee in an eligible class for any reason;
>
> unless continued in accordance with any of the Continuation Provisions.
>
> …

> **If you are** Disabled and You cease to be an Active Employee, Your insurance will be continued:
>
>> 1) during the Elimination Period while You remain Disabled by the same Disability; and
>>
>> 2) after the Elimination Period for as long as You are entitled to benefits under The Policy.

HARTPLN at 30, 34, 44-45.

4. Plaintiff was also enrolled in Life Insurance Policy Number 0GL8717144. *Id.* at 57-85. The Life Insurance Policy provided in relevant part:

> Disabled means You are prevented by injury or sickness from doing any work for which You are, or could become, Qualified by:
>
> 1) Education;
>
> 2) Training; or
>
> 3) Experience.
>
> In addition, You will be considered Disabled if You have been diagnosed with a life expectancy of 24 months or less.
>
> . . .
>
> In order to qualify for the WOP benefit, the employee must:
>
> 1) be covered under The [Life] Policy and be under age 60 when You become Disabled;
>
> 2) be Disabled and provide Proof of Loss that You have been Disabled for 9 consecutive month(s), starting on the date You were last Actively at Work; and
>
> 3) provide such proof within one year of Your last day of work as an Active Employee.
>
> In any event, You must have been Actively at Work under The Policy to qualify for Waiver of Premium.

*Id.* at 67.

5. Plaintiff suffers from diabetes mellitus, a condition that was first diagnosed when she was eleven years old. HARTRCD at 124. As a result of her diabetes, Plaintiff has seizures, insulin resistance syndrome, hypertension, gastroparesis, hypoglycemia unawareness, neuropathy, carpal/tarsal tunnel syndrome, and flexor tenosynovitis, also called "trigger finger," a condition that causes the fingers or thumb to lock when bent and for which Plaintiff has had nine release surgeries. *Id.* at 204, 330, 383-85, 409, 739. Plaintiff also suffers from "diabetic cataracts," a condition that eventually required surgery in 2015. *Id.* at 241. Plaintiff's gastroparesis has caused "a longstanding history of nausea and vomiting," which increased in frequency until Plaintiff reported episodes of vomiting "every 1-2 days" in June, 2014. *Id.* at 399.

6. On October 23, 2013, Plaintiff was admitted to the emergency room, feeling nauseated and actively vomiting. *Id.* at 680-81. During her ER interview, Plaintiff described enduring these symptoms for four months. *Id.* at 680.

7. Following her ER visit, Plaintiff took leave from work from November 4 through December 13, 2013. *Id.* at 837-38. She applied for and was awarded Short Term Disability (STD) benefits from November 12 to December 13, 2013. *Id.* at 325, 837-38. In support of her STD application, Plaintiff's physician, Dr. Molly Carlson, wrote that Plaintiff's "acute issues" could take up to three months to stabilize, at which point she

could return to work. *Id*. at 861-62. But Dr. Carlson also reported that Plaintiff was not restricted in her ability to walk, stand, or sit.[2] *Id*.

8.   On December 16, 2013, Plaintiff returned to work following her leave. *Id*. at 817. When she returned to work, Plaintiff did not request accommodations from the Human Resources Department at Neustar. *Id*. at 2, 613. However, Plaintiff's immediate supervisor, Steve DeJong, reported that Plaintiff came back to work with the understanding that she would not work fulltime. *Id*. DeJong also contemplated bringing Plaintiff down to a part-time schedule permanently. *Id*. Plaintiff reported that when she returned to work, she was only able to work approximately 20 hours a week and was permitted to take breaks throughout the day. *Id*. at 614.

9.   The record includes several months of Plaintiff's bi-weekly payroll receipts from Neustar, which demonstrate that in the month after Plaintiff returned to work—December 16, 2013 to January 17, 2014—Plaintiff received her usual weekly salary of $1,689.75. *Id*. at 360-61, 367, 381. Neustar did not keep attendance records for exempt employees such as Plaintiff. *Id*. at 817.

10.   On January 17, 2014, as part of a large wave of layoffs at Neustar, Plaintiff was terminated. *Id*. at 613.

---

[2] On June 2, 2015, Dr. Carlson wrote a note explaining her November 22, 2013, disability assessment for Plaintiff: "The fact that at that time I believed she was unlimited or had few exertional limitations in such activities as standing, walking, sitting and lifting does not mean that I thought she could perform her job on a consistent basis, hence the statement supporting disability." HARTRCD at 316.

11. On January 14, 2014, Plaintiff submitted a Notice of Continuation of Coverage form, requesting that Defendant provide her with information about converting her Life Insurance Policy and LTD Policy to individual plans ahead of her final day of work with Neustar. *Id*. at 776. Plaintiff's subsequent application for a conversion policy was denied because Plaintiff "returned to work with accommodations" when she returned from her short-term leave. *Id*. at 632. In its denial letter, Defendant wrote: "We have completed our review of your claim for benefits and have determined that the information in your file shows that you were either Partially or Totally Disabled at the time of termination from your employer . . . ." *Id*. at 631.

12. Plaintiff's application for LTD benefits was also denied. *See id*. at 76 (denying coverage because Plaintiff returned to work on December 16, 2013 "on a full-time basis"); *id*. at 62 (reiterating denial of coverage based on the conclusion that Plaintiff was able to conduct all of the functions of her job by November 22, 2013: "We have concluded from the combination of all the medical information in your file that you are able to sit at a desk, use a computer and general office equipment"); *id*. at 55 (third denial of coverage based on Plaintiff's alleged ability to perform the essential functions of her job, as demonstrated by her full pay upon returning from short-term leave and a lack of medical evidence contradicting this assumption); *id*. at 46-48 (final denial based on previously described reasons).

13. Plaintiff applied for and received unemployment benefits from February, 2014 to August, 2014. *Id*. at 54.

# IV. CONCLUSIONS OF LAW

## A. Standard under ERISA

1. ERISA provides that a qualifying ERISA plan "participant" may bring a civil action in federal court "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]" 29 U.S.C. § 1132(a)(1)(B); *Metro Life Ins. Co. v. Glenn*, 554 U.S. 105, 108 (2008) (ERISA "permits a person denied benefits under an employee benefit plan to challenge that denial in federal court."). The Court finds that Plaintiff is a qualified participant.

2. As discussed above, ERISA does not set forth the appropriate standard of review for actions challenging benefit eligibility determinations. *Firestone*, 489 U.S. at 109. The parties, however, have stipulated to *de novo* review. Dkt. ## 15-16. The Court accepts the parties' stipulation and reviews the record *de novo*. "When conducting a *de novo* review of the record, the court does not give deference to the claim administrator's decision, but rather determines in the first instance if the claimant has adequately established that he or she is disabled under the terms of the plan." *Muniz v. Amec Constr. Mgmt., Inc.*, 623 F.3d 1290, 1295-96 (9th Cir. 2010). The administrator's "evaluation of the evidence is not accorded any presumption of correctness." *Perryman v. Provident Life Ins. & Acc. Ins. Co.*, 690 F.Supp.2d 917, 942 (D. Ariz. 2010). In reviewing the administrative record and other admissible evidence, the Court "evaluates the persuasiveness of each party's case, which necessarily entails making reasonable inferences where appropriate." *Oldoerp v. Wells Fargo & Co. Long Term Disability*

*Plan*, 12 F.Supp.3d 1237, 1251 (N.D. Cal. 2014) (quoting *Schramm v. CNA Fin. Corp. Insured Grp. Ben. Program*, 718 F.Supp.2d 1151, 1162 (N.D. Cal. 2010)).

3. When a district court "reviews a plan administrator's decision under the *de novo* standard of review, the burden is placed on the claimant." *Muniz*, 623 F.3d at 1294; *see also Horton v. Reliance Standard Life Ins. Co.*, 141 F.3d 1038, 1040 (11th Cir. 1998) (claimant "bears the burden of proving his entitlement to contractual benefits"). However, this does not relieve the plan administrator from its duty to engage in a "meaningful dialogue" with the claimant about her claim. *See Booton v. Lockheed Med. Ben. Plan*, 110 F.3d 1461, 1463 (9th Cir. 1997) ("[W]hat 29 C.F.R. § 2650.503-1(g) calls for is a meaningful dialogue between ERISA plan administrators and their beneficiaries . . . [I]f the plan administrators believe that more information is needed to make a reasoned decision, they must ask for it."). Even on *de novo* review, this Court can remand a disability claim to the plan administrator if the record is not sufficiently developed. *See Mongeluzo v. Baxter Travenol Long Term Disability Ben. Plan*, 46 F.3d 938, 944 (9th Cir. 1995) (finding that "additional evidence is necessary to conduct an adequate *de novo* review of the benefit decision" and "leav[ing] to the district court whether to remand to the plan administrator for an initial factual determination"); *Kowalski v. Farella Braun & Martell, LLP*, No. C-06-3341 MMC, 2008 WL 5397511, at *15 (N.D. Cal. Dec. 23, 2008) (finding, on *de novo* review, that there was "inadequate medical and vocational evidence in the record to support a finding on such an issue" and remanding the claim to the administrator for consideration.").

**B.    Disability Under the Plan**

    1.  <u>Plaintiff was Disabled During the Elimination Period</u>

4.    At issue is whether Plaintiff's condition qualifies as a disability under the LTD Plan. The LTD Plan does not require Plaintiff to be completely incapacitated. Instead, Plaintiff was disabled under the Plan if she was prevented from performing one or more of the essential duties of her occupation—including the ability to work the number of hours in her regularly scheduled work week—during the 180-day Elimination Period. HARTPLN at 43-44. After the Elimination Period, Plaintiff remained disabled under the Plan if she was unable to perform her occupation for two years, and as a result her monthly earnings during that period were less than 80% of her pre-disability earnings. *Id*. at 43. After those two years, Plaintiff remained disabled if she was unable to perform any occupation. *Id*.

5.    The Court finds that Plaintiff has demonstrated she was disabled throughout the 180-day Elimination Period that began on her initial date of disability, November 5, 2013, and ended May 3, 2014. Defendant makes a number of arguments against a finding of disability during the Elimination Period but none of these arguments are ultimately persuasive. First, Defendant argues that Plaintiff was not disabled under the Plan because she earned 100% of her pre-disability earnings for a period of time after her November 5, 2013 disability onset date. Dkt. # 15 at 12; HARTRCD at 325. However, under the language of the Plan, Plaintiff's earnings were irrelevant to a finding of disability until after she was prevented from performing one or more of the essential duties of her occupation for the entire Elimination Period. HARTPLN 43. The record

demonstrates that when Plaintiff returned to Neustar following her short-term disability leave, she worked less than her regularly scheduled 40-hour work week. HARTRCD 613-14. Further, upon her return, Plaintiff was permitted to work with a number of accommodations—a fact that Defendant cited in finding that Plaintiff was ineligible for a conversion plan. *See id.* at 32, 612 ("[Plaintiff] having issues for some time—further clarification came from er [sic] that [Plaintiff] was being accom[modated] at home and not working full hours—as such [Plaintiff] not performing all ess[ential] duties.").

6. Defendant also questions the sufficiency of Plaintiff's medical evidence. Dkt. # 15 at 7-8, 12-13. As part of the record, Plaintiff submitted a number of medical records covering the time period between her initial short-term disability leave through the Elimination Period. *See e.g. id.* at 416 (during an October 31, 2013 office visit, Dr. Carlson noted that 2-3 times a week Plaintiff experienced "vomiting out of nowhere. Sometimes without warning . . . . [it is] really affecting her quality of life"); *id.* at 408 (follow up visit with Dr. Carlson where she noted that Plaintiff's gastroparesis was "flaring up"); *id.* at 399 (June 27, 2014 gastroenterology consultation noting Plaintiff's "longstanding history of nausea and vomiting" increasing in frequency with episodes of vomiting every one to two days); *id.* at 477 (August 15, 2014 note from Dr. Carlson: "[Plaintiff] has cognitive impairment and muscle spasms which impair her ability to work, even in a sedentary position"). These records demonstrate that Plaintiff continued to struggle with the same disabling symptoms that prevented her from returning to work at full capacity in December, 2013.

1         Defendant, however, cites Dr. Carlson's attending physician statement, submitted in November, 2013, as contradictory to Plaintiff's position that she was unable to return to fulltime work after her short-term leave. *See id*. at 861-62. While Dr. Carlson's November statement noted Plaintiff's symptoms—"low blood sugar with loss of consciousness, daily vomiting"—Dr. Carlson also wrote that Plaintiff had no restrictions in her ability to sit, stand, or walk. *Id*. Dr. Carlson later explained her findings: "The fact that at that time I believed she was unlimited or had few exertional limitations in such activities as standing, walking, sitting and lifting does not mean that I thought she could perform her job on a consistent basis, hence the statement supporting disability." *Id*. at 316. The Court sees no contradiction between Dr. Carlson's November statement finding that Plaintiff could sit, stand, and walk without restriction and a finding of disability under the definition provided in the Plan. Based on Plaintiff's symptoms, as described in Dr. Carlson's November assessment, Plaintiff may have been prevented from performing the essential duties of her job—such as the ability to concentrate and perform some driving—even if she were capable of sitting without restrictions. *Id*. at 795, 799, 837.

7.     Finally, Defendant argues that Plaintiff is disqualified from a finding of disability under the Plan based on her application for unemployment benefits, which required her to certify that she was "able and available for work." Dkt. # 15 at 13. In response, Plaintiff argues that there is no contradiction between her unemployment certification and the Plan's definition of disability. Dkt. # 21 at 2. Plaintiff was eligible for unemployment benefits if she was "able to work, and [was] available for work in any trade, occupation,

profession, or business for which . . . she is reasonably fitted." RCW 50.20.010(1)(c). In contrast, at the time she applied for unemployment benefits, Plaintiff was disabled under the Plan if she was "prevented from performing one or more of the Essential Duties of [her] occupation." HARTPLN at 43.

Plaintiff's search for work for which she was "reasonably fitted" is not in conflict with her inability to perform "[her] Occupation" under the Plan. *Id*.; *see also DeLisle v. Sun Life Assur. Co. of Canada*, 558 F.3d 440, 448 (6th Cir. 2009) (certification of ability to work on unemployment benefit application did not amount to persuasive evidence that applicant was able to complete the duties of her own job); *Bellavita v. Paul Revere Life Ins. Co.*, 3:96CV608 (AHN), 1997 WL 597115, at *4 n.1 (D. Conn. Sept. 11, 1997) (same). Further support for this argument is found in the Plan's offset provision for LTD benefit recipients who also receive unemployment benefits. HARTPLN at 45. This provision acknowledges that the definition of disability used for unemployment benefits does not encompass the definition of disability under the Plan.

8. Because Plaintiff was disabled when she was dismissed from Neustar, her coverage under the Plan did not terminate. *Id*. at 34 (coverage is continued "during the Elimination Period while You remain Disabled by the same Disability; and after the Elimination Period for as long as You are entitled to benefits under The Policy."). There is sufficient, consistent evidence that Plaintiff's diabetes and related symptoms—in particular her gastroparesis—caused her initial disability and continued to render her disabled throughout the Elimination Period.

//

### 2. The Court Cannot Determine on This Record Whether Plaintiff was Disabled Beyond the Elimination Period

9. The Court must next determine whether Plaintiff was prevented from performing her occupation for the two years following the Elimination Period—and as a result earned less than 80% of her indexed disability earnings—for two years past the Elimination Period. HARTPN at 43. If the Court finds that Plaintiff was disabled during this period, the Court must then evaluate whether Plaintiff was capable of performing any occupation at all after that. *Id*. The Court cannot make either determination on this record.

10. The record includes information regarding Plaintiff's physical limitations and more limited information on the impact that her medical condition has on her ability to perform in the workplace through May 3, 2014. *See* HARTRCD at 502 (physical capacities evaluation form submitted by Dr. Carlson). However, the record includes only a single form, dated July, 2014, with information on Plaintiff's ability to perform in the workplace during the two years following the Elimination Period, and no vocational information from which the Court could adequately determine whether Plaintiff is capable of performing *any* occupation after that.

11. While Plaintiff urges the Court to supplement the record with her favorable Social Security Disability Insurance (SSDI) ruling from the Social Security Administration (SSA), Plaintiff has not submitted the record upon which the SSA determination was made. And as Defendant correctly notes, "different standards apply to determine whether a claimant is entitled to SSDI benefits and whether a claimant qualifies as 'disabled' under the terms of an ERISA Plan." Dkt. # 19 at 4 (citing *Black & Decker Disability*

*Plan v. Nord*, 538 U.S. 822, 830 (2003)). The SSDI statute defines disability as the inability to "engage in any . . . kind of substantial gainful work." *Id*. § 423(d)(2). By contrast, the Plan refers to an inability to perform "Any Occupation."

"[A] plan is not required to accept a Social Security adjudication of disability as binding on it where the definitions of disability are different." *See Bard v. Bos. Shipping Ass'n*, 471 F.3d 229, 242 n.17 (1st Cir.2006). However, "that does not mean that the Social Security determination provides no relevant evidence." *Id*. In this case, because Plaintiff failed to submit the record upon which the SSA made its determination, the Court and the Defendant are left to guess at the evidence relied upon by the SSA, evidence that is potentially irrelevant to a determination of disability under the Plan. Therefore, the Court will not accept the incomplete Social Security file into the record as proof of Plaintiff's disability.[3]

12. Plaintiff has demonstrated disability under the Plan through the end of the Elimination Period, May 3, 2014. However, because the record does not include sufficient information regarding Plaintiff's ability to perform her occupation from May 4, 2014 through May 4, 2016, nor any information on Plaintiff's ability to perform *any* occupation beyond that date, the Court remands to Hartford with instructions to perform a thorough employability analysis to determine whether, as of May 4, 2014, Plaintiff was

---

[3] The Court notes, however, that the Social Security Administration's adjudication of Plaintiff's disability could provide relevant evidence to Defendant in its determination on remand. *Bard*, 471 F.3d at 242 n.17.

disabled under the terms of the Plan and to develop the record accordingly. *See Kowalski v. Farella, Braun & Martell, LLP*, 2008 WL 5397511, at *15.

**C.     WOP Benefits**

Plaintiff also seeks Waiver of Premium (WOP) benefits under the Life Insurance Policy. Dkt. # 16 at 21-24. In order to qualify for Waiver of Premium benefits, an employee must, among other things, "be Disabled and provide Proof of Loss that [she has] been Disabled for 9 consecutive month(s), starting on the date [the employee] was last Actively at Work." HARTPLN at 67. Under this provision, "Disabled means You are prevented by injury or sickness from doing any work for which You are, or could become qualified by: 1) education; 2) training; or 3) experience." *Id*. "A person who submits proof satisfactory to [Defendant] of his or her Terminal Illness will also meet the definition of Disabled for Waiver of Premium." *Id*. at 69. As discussed *supra*, Section IV.B.2, Plaintiff has submitted no information to support such a determination.

Instead, the thrust of Plaintiff's argument rests on a typo in the Policy's definition of Terminal Illness: "Terminal Illness or Terminally Ill means a life expectancy of **1224** months or less." *Id*. at 69 (emphasis added). Plaintiff argues that the typo renders the definition of terminal illness ambiguous and she urges the Court to take judicial notice that her life expectancy is less than 1224 months. Dkt. # 16 at 23. The Court finds no ambiguity in the Policy's typo because it is clear that Defendant did not intend to define all employees with a life expectancy of less than 102 years (1224 months) as terminally ill. *Sides v. Macon Cty. Greyhound Park, Inc*., 3:10-CV-895-MEF, 2011 WL 2728926, at *4 (M.D. Ala. July 13, 2011) (describing a similar category of typo as "[s]o obvious

ORDER - 17

that it does not in any way obscure the obvious meaning of the sentence or the nature of the agreement between the parties"); *see also SSP Capital Partners, LLC v. Mandala, LLC*, 715 F. Supp. 2d 443, 449 (S.D.N.Y. 2009) (such an argument "seeks to make much ado about nothing more than a 'typo.'").

Accordingly, the Court denies Plaintiff's request for WOP benefits.

## V. CONCLUSION

The Court hereby FINDS and ORDERS:

1) Defendant's Motion for Judgment under Federal Rule of Civil Procedure 52 (Dkt. # 15) is DENIED.

2) Plaintiff's Motion for Judgment Under Federal Rule of Civil Procedure 52 (Dkt. # 16) is GRANTED in part and DENIED in part. Plaintiff is entitled to receive long-term disability benefits from the beginning of her eligibility through the 180-day Elimination Period prescribed in the LTD Plan. However, the Court REMANDS to Hartford the issue of extending benefits to Ms. Houghton beyond the Elimination Period. Plaintiff is not eligible for WOP benefits under the Plan.

3) This matter is now CLOSED.

DATED this 31st day of August, 2017.

The Honorable Richard A. Jones
United States District Judge